NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| LIBERTY MUTUAL FIRE INSURANCE COMPANY,<br><br>*Plaintiff*,<br><br>v.<br><br>NATIONAL CONTINENTAL INSURANCE COMPANY,<br><br>*Defendant*. | Civil Action No. 15-7869<br><br>OPINION |

**ARLEO, UNITED STATES DISTRICT JUDGE**

**THIS MATTER** comes before the Court on Plaintiff Liberty Mutual Fire Insurance Company's ("Plaintiff" or "Liberty") motion for summary judgment and National Continental Insurance Company's ("Defendant" or "NCIC") motion for summary judgment. ECF No. 26, 29. For the reasons set forth herein, Plaintiff's motion is **GRANTED** and Defendant's motion is **DENIED**.

**I.   BACKGROUND**

This insurance coverage dispute arises from a personal injury action filed in the New Jersey Superior Court, Law Division, Essex County, captioned Villar v. Synagro Technologies, Inc., et al., docket no. ESX-L-5110-12 (the "Underlying Action"). Compl. ¶ 6. Plaintiff and Defendant here disagree on which party's insurance policy affords primary coverage to the defendant in the Underlying Action.

The Underlying Action arose from a July 20, 2010 accident that occurred at a facility owned by the Passaic Valley Sewerage Commission ("PVSC"). Id. at ¶ 7. The plaintiff in the

1

underlying action, Gerardo Villar, was a truck driver employed by DJW Transport, Inc. ("DJW"). Id. at ¶ 8. PVSC contracted with Environmental Protection and Improvement Company, Inc., ("EPIC") to pick up and transport bulk waste from its facility. Id. at ¶ 9. Pursuant to an August 1, 2006 hauling agreement (the "Hauling Agreement"), EPIC subcontracted the hauling work to DJW, Villar's employer. Id. at ¶ 10. On July 20, 2010, Villar arrived at the PVSC site to load and haul away the bulk waste pursuant to the Hauling Agreement. Id. at 12. Villar was operating a tractor owned by DJW, which was connected to a trailer owned by EPIC. Id. at 13. After the trailer was filled with bulk waste and before leaving the facility, Villar attempted to cover the loaded trailer with a tarp secured by bungee cords. Id. at ¶ 14. The tarping of the bulk waste was required by law. Id. While attempting to cover the loaded trailer, Villar was standing on a rolling staircase at an elevation of approximately nine feet. Id. at ¶ 15. In the course of securing the tarp with the bungee cords, one of the cords snapped and Villar fell backwards to the ground, sustaining serious injuries. Id. at ¶ 16. Villar brought suit against EPIC, contending that the rolling staircase, tarp, and bungee cords, allegedly supplied by EPIC, were defective. Id. at ¶ 17.

In the underlying action, coverage was available under two distinct policies. The tractor Villar was operating was an "insured auto" under a commercial auto insurance policy issued by Defendant NCIC to DJW. Id. at ¶ 24-25. The trailer, which was owned by EPIC and connected to the DJW tractor at the time of the accident, was a "covered auto" under a business auto insurance policy issued by Plaintiff Liberty. Id. at ¶ 21-22. Ulitmately, the Underlying Action settled. Id. at ¶ 33. Both Plaintiff and Defendant contributed to the settlement, and both reserved the right to recover their respective contributions in the instant action. Id.

Here, Plaintiff Liberty seeks declaratory judgment that EPIC is entitled to primary coverage under the NCIC policy and reimbursement in the amount of $312,500 paid toward the

2

settlement of the underlying action; to reimburse of defense fees and costs of $80,315.99 incurred in the underlying action; and awarding fees incurred here. Defendant seeks summary judgment declaring that Plaintiff is not entitled to coverage under the NCIC policy, that Plaintiff is required to provide coverage to EPIC for the accident, and awarding fees and costs.

## II. DISCUSSION

Here, Liberty argues that the tractor and trailer are a connected unit, EPIC is a "permissive user" of the tractor under Defendant's policy, there is coverage under the NCIC policy, and that coverage is primary. This Court agrees.

### A. Motion for Summary Judgment Standard

Under Rule 56(c) of the Federal Rules of Civil Procedure, a court should grant summary judgment when "there is no genuine issue as to any material fact and [] the moving party is entitled to judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). In considering a motion for summary judgment, the Court views all evidence in the light most favorable to the party opposing summary judgment. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587. The party opposing summary judgment must make a showing sufficient to establish the essential elements of its claim. Celotex, 477 U.S. at 322–34. On cross motions for summary judgment, the same standards and burdens remain applicable. See Appelmans v. City of Phila., 826 F.2d 214, 216 (3d Cir. 1987).

### B. Were the Connected Tractor and Trailer One Unit?

Plaintiff argues the tractor and trailer should be regarded as one unit for determining coverage because they were connected at the time of the accident. Defendant argues this analysis is unnecessary because EPIC, as both the tortfeasor and the named insured under Plaintiff's policy, is entitled to coverage under Plaintiff's policy alone. The Court agrees with Plaintiff.

3

The law here is undisputed and Defendant's unsupported argument to the contrary is unavailing. "It is an accepted principle of insurance law that where an accident arises out of the use of a combined vehicle such as a tractor-trailer and where separate policies cover the tractor and trailer, all insurance applicable to the combined vehicle comes into play, regardless of which part of the rig was physically involved in the accident." Contrans, Inc. v. Ryder Truck Rental, Inc., 836 F.2d 163, 165 (3d Cir. 1987); see also Carolina Cas. Ins. Co. v. Travelers Prop. Cas. Co., 90 F. Supp. 3d 304, 318 (D.N.J. 2014); Blue Bird Body Co. v. Ryder Truck Rental, Inc., 583 F.2d 717, 727 (5th Cir. 1978). To put it simply, "coverage variously on the tractor or the trailer is merely a means of attaching insurance to the rig." Contrans, 836 F.2d at 165.

There is no question that the tractor and trailer were connected at the time of the accident. Thus, in keeping with Contrans, the Court is satisfied that the connected tractor-trailer should be regarded as the equivalent of an inseparable unit for determining insurance coverage.

Defendant attempts to distinguish Contrans, Carolina Casualty, and Blue Bird, by arguing that they do not "involve a set of facts where the tortfeasor is also the owner of a trailer involved in a loading/unloading accident." Id. However, Defendant fails to show that such facts would negate the "accepted principle" that all insurance applicable to the component parts of a combined vehicle comes into play in determining coverage.

Consequently, the operative question becomes whether EPIC was using the combined unit at the time of the accident.

**C. Was EPIC Using the Unit at the Time of the Accident?**

Plaintiff argues EPIC was using the unit at the time of the accident because it supplied allegedly defective equipment—the tarp, bungee cord, and rolling staircase—for the sole purpose of facilitating the loading and transporting of waste from PVSC. Defendant responds that bungee

4

cord was not integral to the loading process and, therefore, Plaintiff was not using the unit at the time of the accident. The Court agrees with Plaintiff.

Use of a vehicle "includes that acts of loading and unloading the vehicle. Kennedy v. Jefferson Smurfit Co., 147 N.J. 394, 398 (1997). "To speak of 'loading' a tractor is almost meaningless. The tractor/trailer rig functions as a unit-articulated, to be sure, but no different in principle from the unitary front and back halves of a straight truck." Carolina Causalty, 90 F. Supp. 3d at 317. New Jersey follows the "complete operation" doctrine as it pertains to use of a vehicle. Cenno v. W. Virginia Paper & Pulp Co., 109 N.J. Super. 41, 47, 262 A.2d 223, 226 (App. Div. 1970). Under this doctrine, "any occurrence during and arising out of the process of unloading is covered." Id. at 46-47. The "critical issue" is whether an act—here, the supplying of the equipment—was an "integral part of the loading activity." Kennedy, 147 N.J. at 400. In Kennedy, the court determined that selection of a defective pallet was part of the loading process because the pallet was "necessary in order to load the goods onto [the] trailer." Id. Plaintiff contends Kennedy controls the case here because EPIC's "sole purpose in furnishing the tarp and bungee cords and especially the rolling staircase was to facilitate the loading and transport of the waste from the PVSC to its ultimate destination." Pl's. Br. at 8.

Defendant concedes the tarp was integral to loading and unloading because tarping is required by law, but argues the bungee cords and rolling staircase were not necessary to load the waste into the trailer. Def's. Br. at 9. Defendant relies on Cenno to supports its position. 109 N.J. Super. 41. In Cenno, the plaintiff was unloading a bale of cardboard boxes from a truck. Id. at 43. The cardboard was baled using metal bands and clips manufactured by the defendant. Id. Plaintiff was pulling on a band securing the bale when the band came apart, causing plaintiff to lose his balance and fall out of the truck. Id. at 44. The court determined the negligent act—

5

defective manufacturing of the band securing the bale—was not "causally connected with the loading or unloading in any way." Id. at 47. Analogizing to Cenno, Defendants contend supplying of the defective bungee cord here did not constitute use.

The Court is not persuaded by Defendant's argument. In Kennedy, the Supreme Court of New Jersey distinguished Cenno, noting that it was "unclear whether the cardboard was baled with metal bands solely to facilitate its shipment or whether that was a requirement of [defendant's] customer." 147 N.J. at 405. It went on to state, "If there had been a factual basis for concluding that the baling was done solely to enable shipment of the goods, the Cenno court would have found [defendant] to be an additional insured." Id. Here, there is a factual basis for concluding that the supplying of the tarp, bungee cords, and staircase were done solely to enable shipment of the goods. As both parties agree, tarping is required for the transportation of waste. The staircase and the bungee cords were necessary to secure the tarp—without the bungee cords, the tarp would not have stayed on during transportation of the waste and, without the staircase, Villar could not have attached the cords.

The supplying of the equipment here, like the selection of the pallet in Kennedy, was an "act in preparation of and integral to the loading process." Id. Having established that EPIC was using the combined vehicle at the time of the accident, the analysis moves to whether Plaintiff's or Defendant's policy affords primary coverage.

**D. Which policy affords primary coverage to EPIC?**

Plaintiff argues that Defendant-NCIC's policy provide primary coverage and that Plaintiff-Liberty's policy provides excess coverage due to the "other-insurance" provisions contained in each respective policy. Defendant responds that the terms of the NCIC policy do not grant primary coverage to a trailer unless the trailer is both listed on the NCIC declarations page, which EPIC's

6

trailer was not, and attached to an insured tractor. Because those criteria are not satisfied, Defendant argues the coverage under its policy is excess. The Court agrees with Plaintiff.

"As a general matter, insurance policies may be divided into two levels of coverage: primary and excess." Carolina Casualty, 90 F. Supp. 3d at 322. A primary insurance policy "attaches immediately upon the happening of the occurrence that gives rise to liability," whereas an excess policy "provides protection to an insured for liability for an amount above the maximum coverage provided by the primary policy." W9/PHC Real Estate LP v. Farm Family Cas. Ins. Co., 407 N.J.Super. 177, 196, 970 A.2d 382 (App.Div.2009). If "more than one policy applies at the same level of coverage, courts look to those policies' 'other-insurance' provisions." Carolina Casualty, 90 F. Supp. 3d at 322. "Such provisions are designed to allocate payouts as among the insurers." Id. "A primary policy with an excess other provision . . . is deemed to be excess; no payment is required unless and until the other primary policy exhausts its limits." Id. Courts interpreting insurance contracts should give the words in a policy their ordinary meaning. Longobardi v. Chubb Ins. Co., 121 N.J. 530, 537, 582 A.2d 1257 (1990); see also Voorhees v. Preferred Mut. Ins. Co., 128 N.J. 165, 175, 607 A.2d 1255 (1992) *510 ("Generally, an insurance policy should be interpreted according to its plain and ordinary meaning.").

In the tractor-trailer context, excess "other-insurance" provisions generally function in the following way:

> Excess insurance coverage typically arises when the policyholder is driving a non-owned vehicle, or in the case of trailers, when the trailer is attached to a non-owned vehicle. The evident intent of such a provision is to have the owner's insurance cover any losses in the first instance, with the excess policy simply remaining available in the event of a shortfall. In the case of typical automobile insurance, the assumption is that when the insured is driving somebody else's car, the owner's insurance company is the primary carrier; the driver's policy provides excess coverage. Likewise, when the insured has attached its trailer to somebody else's vehicle, the insurance procured by the owner of that vehicle is the primary source of coverage. Only if the owner's insurance is insufficient does the trailer coverage

7

become operative. Thus the obvious assumption underlying the St. Paul policy, in providing only excess coverage on the trailer when it is attached to a non-owned vehicle, is that the owner of the tractor will supply the primary coverage. This analysis is perfectly consistent with the general rule that, for insurance coverage purposes, the tractor and trailer are treated as one operating unit; coverage on the one effectively serves as coverage on the whole.

Contrans, Inc. v. Ryder Truck Rental, Inc., 836 F.2d 163, 171–72 (3d Cir. 1987).

The other-insurance provisions at issue here are consistent with the general description in Contrans. Plaintiff-Liberty's other-insurance provision, found at Section IV (B)(5) of the policy, provides the following:

> 5. Other Insurance
>
> a. For any covered "auto" you own, this Coverage Form provides primary insurance. For any covered "auto" you don't own, the insurance provided by this Coverage Form is excess over any other collectible insurance. However, while a covered "auto" which is a "trailer" is connected to another vehicle, the Liability Coverage this Coverage Form provides for "trailer" is:
>
> (1) Excess while it is connected to a motor vehicle you do not own.
>
> (2) Primary while it is connected to a covered "auto" you own.

As Plaintiff argues, the covered auto owned by its insured, EPIC, was a trailer. The trailer was "connected to another vehicle"—the DJW-owned tractor. Therefore, pursuant to Section IV (B)(5)(a)(1), Plaintiff-Liberty's policy provides excess coverage, which does not attach until primary coverage is exhausted.

Defendant-NCIC's "Other Insurance" provision, found on page 19 of the policy, reads as follows:

> 3. Other Insurance
>
> a. For any **insured auto** that is specifically described on the **Declarations Page**, this policy provides primary coverage. For an **insured auto** which is not specifically described on the **Declarations Page**, coverage under this policy will be excess over any and all other valid and collectible insurance, whether

8

> primary, excess or contingent. However, if the **insured auto** which is specifically described on the **Declarations Page** is a **trailer**, this policy will be primary only if the **trailer** is attached to an **insured auto** that is a power unit **you** own and is specifically described on the **Declarations Page**, and excess in all other circumstances. (emphasis in original)

Defendant argues the "trailer involved in the accident is not listed on the declarations page and is not owned by DJW" and, thus, the "NCIC policy dictates that coverage would only apply on an excess basis." Def's. Br. at 12.

The Court disagrees. Defendant would be correct if the "insured auto" under its policy was the trailer rather than the tractor. Defendant does not dispute that it provided primary coverage for the DJW-owned tractor. The "tractor and trailer are treated as one operating unit" and "coverage on the one effectively serves as coverage on the whole." Contrans, 836 F.2d at 172. Therefore, by providing primary coverage for the tractor, Defendant also provides primary coverage for the combined tractor-trailer. See Id. at 172 (finding that insurer's coverage of a tractor involved in a combined tractor-trailer accident was primary and trailer insurer's was excess, even where the tractor insurer's policy explicitly provided no coverage of the trailer itself). Unlike Plaintiff's primary coverage obligation, which becomes excess when its covered trailer is attached to an unowned tractor, Defendant's coverage of the tractor remains primary for this accident. As Plaintiff points out, if the situation were reversed—an accident had taken place while a DJW-owned trailer was attached to an EPIC-owned tractor—NCIC would be arguing the opposite position it takes regarding coverage for the unloading accident. Consequently, NCIC's argument neither accords with the ordinary meaning nor prevails here.

### E. Declaratory Relief

Plaintiff contends it is entitled to reimbursement of the funds it contributed to the settlement of the underlying action because the settlement did not exhaust NCIC's policy limit,

reimbursement of the defense fees and costs incurred in the underlying action because NCIC failed to meet its obligation to fund EPIC's defense as the primary coverage provider, and an award of the costs and fees incurred in defending this action pursuant to N.J. Court Rule 4:42-9(a)(6) (stating that fees are allowable "[i]n an action upon a liability or indemnity policy of insurance, in favor of a successful claimant"). Based on the foregoing, the Court will grant the requested relief, including costs and fees.[1]

### III. Conclusion

The Court **DENIES** Defendant's Motion for Summary Judgment and **GRANTS** Plaintiff's motion for summary judgment.

*/s Madeline Cox Arleo*  
**Hon. Madeline Cox Arleo**  
**United States District Judge**

---

[1] Defendant attempts to argue that Plaintiff is responsible for the $250,000 deductible in its policy. Defendant cites Moore v. Nayer, 321 N.J. Super. 419 (App. Div. 1999), for the proposition that, where a deductible is involved, an excess insurer must satisfy the deductible and then, following satisfaction of the deductible, the primary insurer must respond and exhaust its limit before the excess insurer is required to make any further contributions. Def's. Br. at 12. Nayer, however, holds that a deductible "does not constitute other insurance for the purposes of allocating responsibility under 'other insurance' clauses." Nayer, 321 N.J. Super at 458. The only way Nayer would be relevant here is if NCIC were deemed the excess provider. Under those facts, NCIC would still provide primary coverage up to the amount of the deductible because the deductible is not considered "other insurance" and NCIC would be the only coverage provider. Once the deductible was satisfied there would be another source of insurance and NCIC would only be responsible for amounts in excess of Liberty's policy. Given that NCIC provides primary coverage from dollar one here, there is no need to engage in this analysis.